**FILED**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

2018 FEB 14  AM 10: 46

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

CHARLOTTE KNOBLAUGH,

    Plaintiff,

v.

BLUESTEM BRANDS, INC., D/B/A
FINGERHUT,

    Defendant.

_____/

CASE NO.: 3:18-cv-245-J-20MCR

**DEMAND FOR TRIAL BY JURY**

## COMPLAINT

Plaintiff, CHARLOTTE KNOBLAUGH (hereinafter "Plaintiff"), by and through the undersigned counsel, sues Defendant, BLUESTEM BRANDS, INC., D/B/A FINGERHUT (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1.    The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and to prevent abusive "robo-calls."

2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone

subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC.  There are thousands of complaints to the FCC every month on both telemarketing and robocalls.  The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5.      Jurisdiction and venue, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6.      Subject matter jurisdiction and federal question jurisdiction, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, which provides that the District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and, this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). *See Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7.      Venue is proper in this District as Plaintiff resides within this District, in Flagler County, Florida, the violations described in this Complaint occurred in this District and Defendant transacts business within this District.

## FACTUAL ALLEGATIONS

8.     Plaintiff is a natural person and citizen of the State of Florida, residing in Flagler County, Florida.

9.     Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10.    Defendant is a corporation responsible for attempting to collect an alleged consumer debt from Plaintiff.

11.    Defendant is a corporate entity with its principal place of business located at 7075 Flying Cloud Drive, Eden Prairie, Minnesota 55344, has a registered agent, C T Corporation System Inc., located in Minnesota at 1010 Dale Street North, St. Paul, Minnesota 55117, and which conducts business within the State of Florida.

12.    Plaintiff is the subscriber, regular user and carrier of the cellular telephone number at issue in this action, (386) ***-4862 (hereinafter "cellular telephone"), and was the called party and recipient of Defendant's hereinafter described calls.

13.    Defendant intentionally, knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone, within the last four years, with such frequency as can reasonably be expected to harass and in effort to collect upon an alleged debt.

14.    Defendant's calls to Plaintiff continued, on average, twice per day.

15.    Upon information and belief, some or all of the calls Defendant placed to Plaintiff's cellular telephone were placed using an "automatic telephone dialing system" (hereinafter "Auto-dialer"), which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive

dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C §

227(a)(1) (hereinafter "auto-dialer calls").

16.　　Furthermore, each of the calls at issue were placed by Defendant using an

artificial or prerecorded voice, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

17.　　Within the last four years, Defendant began bombarding Plaintiff's cellular

telephone in attempt to collect an alleged debt.

18.　　Upon receipt of the calls, Plaintiff's caller identification feature identified the

calls were being initiated from, but not limited to, the telephone numbers 844-349-6207, 844-

349-8918, 844-669-7904, and 855-895-3382.

19.　　On several occasions over the last four (4) years, going back to at least 2013,

Plaintiff instructed Defendant's agents to stop calling her cellular telephone.

20.　　Upon Plaintiff's receipt of one such call from Defendant, in or about August

2017, Plaintiff answered the call, received Defendant's artificial or prerecorded message, held on

the line to be connected to a live agent/representative and informed said agent/representative to

immediately cease all calls to her cellular telephone; furthermore, Plaintiff informed Defendant's

aforementioned agent/representative that its incessant calls were harassing her and demanded

Defendant immediately cease all calls to her cellular telephone; thereby, unequivocally revoking

any previously perceived expressed consent to be called using Defendant's Auto-dialer,

predictive dialer, artificial voice or prerecorded message.

21.　　During the aforementioned telephone conversation with Defendant's

agent/representative, Plaintiff explicitly revoked any previously perceived expressed consent

Defendant may have believed it had for placement of telephone calls to Plaintiff's cellular

telephone by the use of an Auto-dialer or artificial voice or prerecorded message.

22.     Each subsequent call Defendant placed to Plaintiff's cellular telephone was done so after she revoked consent and without the express consent of Plaintiff.

23.     Each subsequent call Defendant placed to Plaintiff's cellular telephone was knowingly and willfully placed to her cellular telephone without express consent.

24.     On multiple occasions, Plaintiff informed Defendant to immediately cease calling her cellular telephone; however, despite these attempts, Defendant's calls to Plaintiff's cellular telephone continued.

25.     Defendant called Plaintiff on her cellular telephone in excess of five hundred (500) times since 2013 in attempt to collect an alleged debt.

26.     Due to the extreme volume of calls Plaintiff received, Plaintiff was unable to maintain a fully contemporaneous call log of each and every call she received from Defendant; however, the following is a sample of calls Plaintiff received from October 2017 through November 2017:

    i.  October 13, 2017 at 2:08 p.m.;

    ii.  October 13, 2017 at 5:00 p.m.;

    iii.  October 14, 2017 at 8:13 a.m.;

    iv.  October 16, 2017 at 12:33 p.m.;

    v.  October 17, 2017 at 8:15 a.m.;

    vi.  October 17, 2017 at 3:08 p.m.;

    vii.  October 17, 2017 at 8:45 p.m.;

    viii.  October 18, 2017 at 8:18 a.m.;

    ix.  October 18, 2017 at 1:56 p.m.;

    x.  October 18, 2017 at 4:00 p.m.;

  xi. October 18, 2017 at 6:52 p.m.;

  xii. October 19, 2017 at 8:42 a.m.;

  xiii. October 19, 2017 at 12:27 p.m.;

  xiv. October 19, 2017 at 2:48 p.m.;

  xv. October 19, 2017 at 8:49 p.m.;

  xvi. October 20, 2017 at 1:22 p.m.;

  xvii. October 20, 2017 at 3:49 p.m.;

  xviii. October 20, 2017 at 8:03 p.m.;

  xix. October 21, 2017 at 8:20 a.m.;

  xx. October 23, 2017 at 8:25 a.m.;

  xxi. October 24, 2017 at 12:25 p.m.;

  xxii. October 25, 2017 at 11:43 a.m.;

  xxiii. October 25, 2017 at 5:55 p.m.;

  xxiv. October 26, 2017 at 11:45 a.m.;

  xxv. October 26, 2017 at 4:52 p.m.;

  xxvi. October 27, 2017 at 8:13 a.m.;

  xxvii. October 27, 2017 at 10:20 a.m.;

  xxviii. October 27, 2017 at 10:26 a.m.;

  xxix. October 27, 2017 at 5:03 p.m.;

  xxx. October 27, 2017 at 5:20 p.m.;

  xxxi. November 1, 2017 at 8:13 a.m.;

  xxxii. November 1, 2017 at 9:56 a.m.;

  xxxiii. November 1, 2017 at 11:46 a.m.;

xxxiv.   November 1, 2017 at 11:59 a.m.;

xxxv.   November 1, 2017 at 12:05 p.m.;

xxxvi.   November 1, 2017 at 1:38 p.m.;

xxxvii.   November 1, 2017 at 3:38 p.m.;

xxxviii.   November 1, 2017 at 7:47 p.m.;

xxxix.   November 2, 2017 at 10:38 a.m.;

xl.   November 2, 2017 at 2:44 p.m.;

xli.   November 2, 2017 at 7:54 p.m.;

xlii.   November 3, 2017 at 12:30 p.m.;

xliii.   November 4, 2017 at 8:40 a.m.;

xliv.   November 7, 2017 at 8:16 a.m.;

xlv.   November 7, 2017 at 12:28 p.m.;

xlvi.   November 7, 2017 at 3:33 p.m.;

xlvii.   November 7, 2017 at 4:58 p.m.;

xlviii.   November 7, 2017 at 8:44 p.m.;

xlix.   November 8, 2017 at 10:20 a.m.;

l.   November 8, 2017 at 2:56 p.m.;

li.   November 8, 2017 at 8:54 p.m.;

lii.   November 9, 2017 at 12:06 p.m.;

liii.   November 9, 2017 at 3:40 p.m.;

liv.   November 9, 2017 at 8:57 p.m.;

lv.   November 10, 2017 at 8:16 a.m.;

lvi.   November 11, 2017 at 8:14 a.m.;

lvii.    November 12, 2017 at 6:44 p.m.;

lviii.   November 13, 2017 at 8:19 a.m.;

lix.    November 13, 2017 at 7:25 p.m.;

lx.    November 14, 2017 at 8:15 a.m.;

lxi.    November 15, 2017 at 8:15 a.m.;

lxii.   November 15, 2017 at 3:02 p.m.;

lxiii.  November 15, 2017 at 7:59 p.m.;

lxiv.   November 15, 2017 at 8:35 p.m.;

lxv.    November 16, 2017 at 11:58 a.m.;

lxvi.   November 16, 2017 at 12:19 p.m.;

lxvii.  November 16, 2017 at 12:21 p.m.;

lxviii. November 16, 2017 at 4:49 p.m.;

lxix.   November 16, 2017 at 5:29 p.m.;

lxx.    November 17, 2017 at 11:14 a.m.;

lxxi.   November 17, 2017 at 2:04 p.m.;

lxxii.  November 17, 2017 at 4:59 p.m.;

lxxiii. November 19, 2017 at 1:14 p.m.;

lxxiv.  November 19, 2017 at 7:46 p.m.;

lxxv.   November 20, 2017 at 11:57 a.m.;

lxxvi.  November 20, 2017 at 7:53 p.m.;

lxxvii. November 21, 2017 at 8:21 a.m.;

lxxviii. November 21, 2017 at 8:46 p.m.;

lxxix.  November 22, 2017 at 8:24 a.m.;

lxxx.   November 22, 2017 at 2:32 p.m.;

lxxxi.   November 22, 2017 at 8:08 p.m.;

lxxxii.   November 22, 2017 at 8:49 p.m.;

lxxxiii.   November 24, 2017 at 8:15 a.m.;

lxxxiv.   December 7, 2017 at 12:25 p.m.;

lxxxv.   December 7, 2017 at 2:58 p.m.;

lxxxvi.   December 7, 2017 at 6:04 p.m.;

lxxxvii.   December 7, 2017 at 7:42 p.m.;

lxxxviii.   December 8, 2017 at 8:28 a.m.;

lxxxix.   December 9, 2017 at 8:27 a.m.;

xc.   December 11, 2017 at 3:34 p.m.;

xci.   December 12, 2017 at 8:20 p.m.;

xcii.   December 13, 2017 at 11:56 a.m.;

xciii.   December 13, 2017 at 5:15 p.m.;

xciv.   December 13, 2017 at 7:51 p.m.;

xcv.   December 13, 2017 at 8:38 p.m.;

xcvi.   December 14, 2017 at 7:36 a.m.;

xcvii.   December 14, 2017 at 12:13 p.m.;

xcviii.   December 14, 2017 at 8:19 p.m.;

xcix.   December 15, 2017 at 11:30 a.m.;

c.   December 15, 2017 at 2:46 p.m.;

ci.   December 15, 2017 at 2:57 p.m.;

cii.   December 15, 2017 at 4:34 p.m.;

ciii.   December 15, 2017 at 7:23 p.m.;

civ.   December 16, 2017 at 8:25 a.m.;

cv.   December 17, 2017 at 8:45 p.m.;

cvi.   December 18, 2017 at 10:40 a.m.;

cvii.   December 18, 2017 at 12:25 p.m.;

cviii.   December 19, 2017 at 12:26 p.m.;

cix.   December 20, 2017 at 8:20 a.m.;

cx.   December 20, 2017 at 2:30 p.m.;

cxi.   December 20, 2017 at 5:00 p.m.;

cxii.   December 20, 2017 at 7:02 p.m.;

cxiii.   December 22, 2017 at 8:16 a.m.;

cxiv.   December 22, 2017 at 1:59 p.m.;

cxv.   December 22, 2017 at 2:09 p.m.;

cxvi.   December 22, 2017 at 4:39 p.m.;

cxvii.   December 22, 2017 at 6:16 p.m.;

cxviii.   December 23, 2017 at 9:56 a.m.;

cxix.   December 26, 2017 at 8:24 a.m.;

cxx.   December 29, 2017 at 1:43 p.m.;

cxxi.   January 4, 2018 at 12:18 p.m.;

cxxii.   January 4, 2018 at 8:46 p.m.;

cxxiii.   January 5, 2018 at 8:21 a.m.;

cxxiv.   January 5, 2018 at 4:53 p.m.;

cxxv.   January 6, 2018 at 8:13 a.m.;

cxxvi.    January 6, 2018 at 3:48 p.m.;

cxxvii.   January 7, 2018 at 4:37 p.m.;

cxxviii.  January 7, 2018 at 7:01 p.m.;

cxxix.    January 8, 2018 at 11:46 p.m.;

cxxx.     January 9, 2018 at 8:14 p.m.;

cxxxi.    January 10, 2018 at 8:43 a.m.;

cxxxii.   January 10, 2018 at 8:46 p.m.;

cxxxiii.  January 11, 2018 at 11:55 a.m.;

cxxxiv.   January 11, 2018 at 2:10 p.m.;

cxxxv.    January 11, 2018 at 4:52 p.m.;

cxxxvi.   January 11, 2018 at 7:36 p.m.;

cxxxvii.  January 12, 2018 at 9:16 a.m.;

cxxxviii. January 12, 2018 at 3:43 p.m.;

cxxxix.   January 13, 2018 at 8:13 a.m.;

cxl.      January 14, 2018 at 1:20 p.m.; and

cxli.     January 14, 2018 at 8:25 p.m.

27.    Defendant has, or should be in possession and/or control of, call logs, account notes, Auto-dialer reports and/or other records that detail the exact number of calls it placed to Plaintiff.

28.    Despite actual knowledge of its wrongdoing, Defendant continued its campaign of abuse by continuing to call Plaintiff despite not having Plaintiff's express consent to call her cellular telephone.

29.     Defendant has corporate policies and/or procedures to use an Auto-dialer or artificial voice or prerecorded message, and to place autodialed calls, just as it did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, including Defendant, to permit, elect, or invoke the removal of Plaintiff's cellular telephone number from Defendant's call list.

30.     The structure of Defendant's corporate policies and procedures permits the continuation of calls to individuals like Plaintiff, despite these individuals revoking any consent, or perceived consent, Defendant may have believed it had to place such calls.

31.     Defendant's corporate policies and procedures provided no means for Plaintiff to have her cellular telephone number removed from Defendant's call list; or, otherwise invoke and/or request the cessation and/or suppression of calls to Plaintiff from Defendant.

32.     Defendant has corporate policies or procedures of using an Auto-dialer or an artificial voice or prerecorded message to collect alleged debts from individuals, such as Plaintiff, for its financial benefit.

33.     Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call consumers.

34.     Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

35.     Defendant has numerous complaints against it, across the country, asserting that its Auto-dialer continues to call individuals who have revoked consent to be called by Defendant.

36.     Defendant knowingly employs methods and/or has corporate policies and/or procedures designed to harass and abuse individuals such as Plaintiff.

37.     Defendant knowingly employs methods that do not permit the cessation or suppression of autodialed calls to Plaintiff's cellular telephone.

38.     None of Defendant's cellular telephone calls placed to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

39.     As recently acknowledged by Judge Easterbrook of the Seventh Circuit Court of Appeals in *Patriotic Veterans, Inc. v. Zoeller*, " every call uses some of the phone owner's time and mental energy, both of which are precious."

40.     For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from the occupation of her cellular telephone line and cellular telephone by unwelcomed calls which made the cellular telephone unavailable for legitimate incoming or outgoing calls.

41.     For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from unnecessary expenditure of her time. The time Plaintiff spent on answered calls was unnecessary because she repeatedly asked for calls to stop. Additionally, Plaintiff expended unnecessary time for unanswered calls by dealing with notifications and call logs that reflected the unwanted calls. Furthermore, this also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

42.     Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone was an injury in the form of a nuisance and annoyance to the Plaintiff.

43.     Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

44.     Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of trespass to Plaintiff's chattel, namely her cellular telephone and cellular telephone services.

45.     As a result of aforementioned tenacious telephone calls and collection efforts, Plaintiff was affected, both personally and individually, as she experienced an invasion of privacy and the intrusion upon her right of seclusion. Plaintiff also suffered from stress, worry and ulcers. Additionally, Plaintiff experienced loss of concentration and privacy. Furthermore, Plaintiff was hindered by the loss of telephone battery life and telephone minutes as well as the cost of additional charging, and the intrusion upon and occupation of the capacity of her cellular telephone. All of the abovementioned were caused by, and/or directly related to, Defendant's attempts to collect a consumer debt allegedly owed by Plaintiff.

## COUNT I
### (Violation of the TCPA)

46.     Plaintiff incorporates and re-alleges paragraphs one (1) through forty-five (45) as if fully set forth herein.

47.     Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the Auto-dialer calls it made to Plaintiff's cellular telephone after Plaintiff notified and requested Defendant that he wished for the calls to immediately cease.

48.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an Auto-dialer or artificial voice or prerecorded voice message without Plaintiff's prior express consent and in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble

damages, enjoinder from further violations of these parts and any other such relief the Court may

deem just and proper.

Respectfully submitted,

_/s/ Octavio Gomez_____

Octavio Gomez, Esquire
Florida Bar No.: 0338620
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile:  (813) 223-5402
Primary Email: TGomez@ForThePeople.com
Secondary Email: JKing@ForThePeople.com
*Attorney for Plaintiff*